STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: Appeal of Paul Valois - | } | Docket No. 7-1-06 Vtec |
| Private Landing Strip | } | |
|  | } | |

Decision and Order

Appellant-Applicant Paul Valois appealed from a decision of the Zoning Board of Adjustment of the Town of Addison, upholding the Zoning Administrator's denial of his application for a zoning permit for a private airplane landing strip on his residential property as an accessory use. Appellant-Applicant is represented by Marsha Smith Meekins, Esq.; Appellee Town is represented by Donald R. Powers, Esq.; Interested persons Deborah Laframboise and Janice and Pierre Barre appeared and represent themselves; Interested persons Phillip and Jane Grace entered their appearance but never filed unrepresented party ("pro se") forms and did not participate in telephone conferences or the hearing on the merits.

In the summary judgment order issued in an earlier appeal filed by Appellant-Applicant, Docket No. 226-12-04 Vtec, the Court determined that the Planning Commission only had authority to rule on the site plan criteria, but that the Court had ruled in another Town of Addison case that a private landing strip does not fall within the use category of 'private recreation facility' in the Zoning Regulations. Appeal of Valois, Docket No. 226-12-04 Vtec (Vt. Envtl. Ct., Aug. 24, 2005).

The decision in Docket No. 226-12-04 Vtec left open the possibility that the landing strip may or may not qualify as an accessory use to Appellant-Applicant's single-family residence. It outlined that, in order to be considered an "accessory use," a use must be "customarily incidental and subordinate to" the principal use (citing, generally, In re: Appeal of Stanak & Mulvaney, Docket No. 114-7-01, slip op. at 4–5 (Vt. Envtl. Ct., Feb. 28,

1

2002)).  The decision in Docket No. 226-10-04 Vtec noted that, in any appeal from the Zoning Administrator's action on a zoning permit in this use category,  Appellant-Applicant would have to show whether a private, 1,100-foot-long airstrip is "customarily incidental to" a private residence and whether this use is "subordinate to" Appellant-Applicant's single-family residence use.  The present appeal is from the denial of such an application.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge.  A site visit was taken on the day of the hearing before the commencement of the hearing, with the parties and their representatives.  The parties were given the opportunity to submit written memoranda and requests for findings.  Upon consideration of the evidence as illustrated by the site visit, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

Appellant-Applicant owns a twenty-three-acre residential property on Vermont Route 22A in the Low-Density Residential and Agricultural (LDRA-5) zoning district of the Town of Addison.  The property is roughly rectangular, with the longer side running parallel to Route 22A, except that a one-acre lot on Route 22A in the northwest corner of the rectangle and a .9-acre lot on Route 22A near the southwest corner of the rectangle are owned by other landowners. The southerly of those two smaller lots is owned by the Campbells.  Appellant-Applicant thus has 565 feet of frontage on Route 22A between the two small lots, as well as an additional 103 feet of frontage to the south of the Campbell lot. The north-south dimension of Appellant-Applicant's property (as shown on the survey measured along the easterly property line) is 1043.6 feet in length.  Appellant-Applicant's house and a large accessory metal-sided storage building with large doors, capable of storing his airplane, are located on his property between the road and the proposed landing strip that is the subject of this appeal.

Appellant-Applicant proposes to construct a private, restricted-access airplane landing strip on his property, to be used solely by him for flying his private small airplane

to the property, both for occasional alternative access to his residential property, and to store the airplane in the winter in the metal-sided storage building already renovated for that purpose on his property.

Appellant-Applicant has a pilot's license and engages in flying as a hobby or leisure pursuit. He owns a single-engine, fixed-wing Cessna 177 airplane. Appellant-Applicant proposes to continue to keep his airplane primarily at the Basin Harbor air field, and to use the proposed landing strip only occasionally, including to bring the airplane to his property for winter storage.

Appellant-Applicant proposes a grass landing strip, to be maintained by mowing, and not to be lit at night. The landing strip is 1,100 feet long, oriented roughly parallel[1] to the road in a north-south direction. The property slopes gradually towards the south, and drops off more steeply to the east, so that the only portion of the property flat enough to be used for the landing strip is that portion lying directly to the east of the two small residential lots and Appellant-Applicant's residence and hangar building. The landing strip slopes down towards the south.

Appellant-Applicant proposes the following scope of use as an accessory use:

1. Use of the landing strip only from on or after April 1 to on or before October 30 of each calendar year; with landings only towards the north (along the uphill slope) and take-offs only towards the south (along the downhill slope).
2. Use only by Appellant-Applicant as pilot, with up to one passenger depending on conditions; no use by other pilots.
3. Use only by Appellant-Applicant's current airplane (a Cessna 177) or same size (or smaller) single-engine, fixed-wing airplane; no use by other aircraft.
4. A maximum of ten landings and ten take-offs in each calendar year; no night landings or take-offs.
5. No aviation fuel to be stored on site other than in the airplane's tanks.

The manual for Appellant-Applicant's current Cessna airplane requires 665 feet for take-

---

[1] It must be oriented at a slight angle to the easterly boundary of his property, as the landing strip is proposed to be slightly longer than the surveyed north-south dimension of his property along the easterly boundary line.

off, depending on the wind or other conditions; the take-off length required on a warm day with a maximum load of full fuel and four people would be approximately 750 feet.

Under 5 V.S.A. §207, airports and restricted landing areas, including the subset of such areas designed solely for the personal use of the landowner, must be approved by the Vermont Transportation Board. The application for a certificate of approval must be supported by documentation showing that the proposed facility has received municipal approval. Because of this sequence, although a VTrans inspection was done in 2005 of the proposed landing strip, the deficiencies noted in the VTrans restricted landing area inspection report in evidence as Exhibit 3 have not resulted in any ruling by the Vermont Transportation Board or its designee. As well as noting certain deficiencies with regard to nearby trees, that report noted that the one-way runway proposed in the present appeal (that is, landing only to the south and taking off only to the north) is considered as non-standard in the FAA Advisory Circulars. It appears from the inspection report that without the tree removal within a 15-to-1 slope north of the north end of the landing strip, and without tree removal within a 4-to-1 slope in the transitional areas to the east and west of both the north and the south ends of the landing strip, the proposed landing strip would not be approvable[2] under 5 V.S.A. §207.

Not all of the restricted landing areas discussed in the evidence appear on the federal aviation map ("sectional" map), although once the Vermont Transportation Board approves a restricted landing area, the practice is for that information to be forwarded to the FAA. It is not possible to determine from the evidence presented what the 5 V.S.A. §207 approval status is with regard to the landing strips discussed in evidence but not

---

[2] In addition, §240 of the Zoning Ordinance incorporates by reference 24 V.S.A. §§4405 and 4409 in effect as of the time the Zoning Ordinance was last amended in 1999. That former 24 V.S.A. §4409(b) provided that if a proposed land development is also "subject to regulation under state statutes, the more stringent or restrictive regulation applicable shall apply." Section 240 of the Zoning Ordinance may apply if the proposed landing strip fails to meet the standards for state approval under 5 V.S.A. §207.

4

appearing on the federal sectional map.

The Baker property adjoins the north and east sides of Appellant-Applicant's property. A band of tall trees is located on the northerly property line of Appellant-Applicant's property and the southerly property line of the Baker property, some or most of which are located on the Baker property, immediately to the north of the proposed landing strip, as well as within the so-called transitional area to the northeast and northwest of the proposed landing strip. The trees on the Baker property are not proposed to be cut and they are not within Appellant-Applicant's control. With the trees as they exist, the proposed landing strip is characterized in the VTrans inspection report by deficiencies at least for landings towards the south or take-offs towards the north.

In addition, the VTrans inspection report identifies deficiencies in the form of trees on the Campbell property to the southwest of the landing strip in the transitional area. The trees on the Campbell property are not proposed to be cut and they are not within Appellant-Applicant's control.

The Laframboise property is located directly to the north of the Baker property, in the flight path of a landing to the south or a take-off to the north using the proposed landing strip. The Grace property is located directly to the north of the Laframboise property, in the flight path of a landing to the south or a take-off to the north using the proposed landing strip. The Barre property is located to the north of the Grace property, in the flight path of a landing to the south or a take-off to the north using the proposed landing strip.

Appellant-Applicant provided evidence regarding various restricted landing areas as well as small airports in the Addison County/lower Champlain Valley[3] area of Vermont. Appellant-Applicant sought to show that other restricted landing areas in use in the region

[3] Although the Maule's Roost area in Lincoln is in Addison County, it is in the mountains, not in the lower Champlain Valley geographic area at issue in this case.

are compromised to some extent by trees along the sides of the landing strip or by trees or roadways or houses at the ends of the landing strip. However, we do not reach the question of safety or compatibility with the area as the landing strip is not a conditional use[4] category.

We note at the outset that even though the permitted use category of "accessory use" is omitted from the listed uses for this zoning district, the Town agrees that the omission should be deemed to be a typographical error. Accordingly, we proceed to consider this application as if the permitted use category of "accessory use" appears in the list of permitted uses in the district. Accessory use is defined in Article VIII of the Zoning Ordinance as a "use customarily incidental and subordinate to the principal . . . use and located on the same lot."[5]

Thus, in the present appeal the Court must first determine whether a private landing strip that does not meet the standards for VTrans approval is a use that is "customarily incidental" to an inland single-family residential property use, that is, one surrounded by other landowners' properties. If it is, then the Court must determine whether this particular landing strip is subordinate to this particular residential use of this property.

The Town argues that the Court should only consider landing strips within the Town of Addison; however, to determine whether the landing strip use category is "customarily incidental" to principal single-family residential uses, the Court will examine

---

[4] Of course the Town is free to amend its zoning ordinance to provide for landing strips as a listed conditional use, or to provide for landing strips as a more specifically restricted use that must meed additional regulatory criteria, in the same way that it has done under §§517 or 518 for home light industry or cottage industry, or under §707 for campgrounds.

[5] The Town's memorandum suggests that the house may not necessarily be resided in by Appellant-Applicant. As the accessory nature of the use is in relation to the residential use of the house, it could only even arguably be accessory to the residential use of the house if the pilot is a resident of the house.

at least the similar surrounding geographic area in Vermont, characterized as the lower Champlain Valley, south of Burlington and north of Fair Haven. However, even without regard to the question of whether the landing strips in evidence are approved or approvable for use under the state and federal aeronautical regulatory authorities, very few of the landing strips in the region appear[6] to be comparable to this one.

First, as this is an application for a use asserted to be "customarily incidental" to a single-family residential use, any landing strips that are public or commercial or associated with commercial as well as residential uses, cannot be considered as incidental to a principal single-family residential use. Thus, the landing areas at Shelburne,[7] at Basin Harbor, at Ass-pirin Acres (used for a sky diving business), at Yankee Kingdom (used for a crop-dusting business) and at Dave Farmer's plant nursery business are not pertinent[8] to the decision of whether the landing strip use is customarily incidental to a single-family residential property, even though single-family residences may also be located on those

---

[6] We note that the evidence on the specific grass landing strips in the region was made unnecessarily difficult to analyze, as the various witnesses and documents sometimes referred to the same landing areas by different names, that is, the name or nickname of an owner or the name or location of the air field. Even Appellant-Applicant's own evidence refers to his proposed landing strip as "Valois" in some instances and as "Moeport" in others. Any errors as to the names in this decision are not material to the resolution of this appeal.

[7] This is now a public landing area; formerly it was private and served a circle of five or six residences that surrounded it (see discussion of Spencer and Staton landing areas below).

[8] The limiting factors (length of runways, location of trees or roads) at these landing areas might be relevant if the Court had the task of comparing the aeronautical safety of the proposed landing strip with the other area landing strips; however, that is not the Court's task in this proceeding. Rather, the Court must determine whether such landings strips are customarily incidental to single-family residences (and, if so, whether this landing strip at this single-family residential property is "subordinate" to the principal residential use).

properties.

Similarly, as this is an application for a use asserted to be "customarily incidental" to a single-family residential use, any landing strips that are located on agricultural farm properties cannot be considered as incidental to a principal single-family residential use. Thus, to the extent that the landing areas at the following locations are on farms,[9] they are not pertinent to the decision of whether the landing strip use is customarily incidental to a solely single-family residential property, even though single-family residences may also be located on those properties: Yankee Kingdom, the Duke Dahm property in Ferrisburgh; the Peet property in Cornwall; the Deeds property near Charlotte; and the Torrey property near Shoreham.

Further, as this is an application for a use asserted to be "customarily incidental" to a single-family residential use, any landing strips that are developed so as to be shared by pilots from multiple surrounding residences cannot be considered as incidental to a principal single-family residential use. Thus, the landing areas at the Spencer property in Addison (serving four residences), at the Staton property in Panton (serving 4 or 5 residences) and at Shelburne (which served 5 or 6 residences, including Richardson and Tanzer, prior to its conversion to a public field), are not pertinent to the decision of whether the landing strip use is customarily incidental to a solely single-family residential property, even though single-family residences share the use of these landing strips.

Similarly, as this is an application for a use asserted to be "customarily incidental" to a single-family residential use surrounded by other landowners' properties, any landing strips that are located along the shore of Lake Champlain (so that the approach and take-off can be accomplished over the water), cannot be considered as incidental to a principal single-family residential use surrounded by other landowners' properties. Including the

---

[9] For each of these properties, there was either testimony that they were farm properties or the photographs in evidence showed silos, barns, and crop or pasture land.

landing strips already discussed, as well as the remaining landing strips in the region that appear to be incidental to principal single-family uses, the following restricted landing areas are located with approaches over the lake and therefore are not pertinent to the decision of whether the landing strip use is customarily incidental to a single-family residential use surrounded by other landowners' properties: Bostwick, Deeds, Staton, Yankee Kingdom, Manning, Torrey and Findiesen.

At least two of the four[10] remaining landing strips referred to in the evidence are associated with a principal single-family residential use in an inland area in the lower Champlain Valley. One is the Houghton landing strip on Greenbush Road in Ferrisburgh, which is associated with a single-family residence and hangar building; the runway is 1500 to 1800 feet long and this landing strip is not found on the federal sectional map. The other is the Axinn landing strip in Weybridge, also associated with a single-family residence and hangar building, which is on the federal sectional map. Both of these properties are similar to Appellant-Applicant's property, although the evidence does not reflect whether the landing strips for these properties begin and end at the property boundaries (so that the approach must be accomplished relatively low over the neighbors' properties).

In any event, regardless of the characteristics of these two (or four) landing strips, there are not enough similar inland landing strips in the lower Champlain Valley to find that landing strips are "customarily incidental" to an inland single-family residential use; therefore Appellant-Applicant's proposed landing strip does not qualify as an accessory use. The Court therefore does not reach the question of whether this particular landing strip, running from the north to the south boundary lines of the property, would be

---

[10] The other two are "Brisson" and "Whiting." The Whiting landing strip only appears in the list at the outset of Appellant-Applicant's slide show; no evidence was presented from which the Court could determine anything about it (unless it is one of the others referred to by a different name by other witnesses (see footnote 6 above)). Evidence was presented that the Brisson landing strip was associated with a dwelling, but not as to its location.

9

considered "subordinate" to this single-family residential use.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant-Applicant's landing strip does not qualify as an accessory use to his residence, either for occasional alternative access to his residence or for annual storage[11] of his airplane. This decision does not preclude Appellant-Applicant from making a future municipal application if the zoning ordinance is amended in the future. Any appeal from such decision would be a new appeal and would receive a new docket number.

Docket No. 226-12-04 Vtec, which was held open pending completion of this appeal, also appears to have become final as of this decision in the above-captioned case; accordingly, judgment orders will be issued in both cases effective on May 9, 2007. Please advise the Court as soon as possible before that date if there is any dispute as to the finality of Docket No. 226-12-04 Vtec.

Done at Berlin, Vermont, this 3rd day of May, 2007.

_____
Merideth Wright
Environmental Judge

_____

[11] No evidence was presented on, and we therefore do not reach the question of whether the off-season storage of hobby conveyances (such as aircraft, boats, recreational vehicles, and snow machines) is sufficiently common to make just the off-season storage of the airplane an accessory use to the residential use of the property, if the landing strip were capable of being approved for safety for that single annual trip by the necessary state or federal aeronautical regulatory authorities.

10